JOURNAL ENTRY and OPINION
{¶ 1} Appellant, Ryan Hood ("appellant"), was found guilty of involuntary manslaughter and robbery. He now appeals, asserting that there was insufficient evidence to sustain his conviction. For the following reasons, we affirm appellant's conviction.
 {¶ 2} In the early morning hours of December 26, 2002, appellant and his cousin, Philip Carter ("Carter"), attended a party at Peabody's in Cleveland While at the party, appellant recognized an individual wearing an Avirex leather jacket that looked like the one that was worn by and stolen from his friend, William Scott ("Scott"). Using his cell phone, appellant called Scott and told him that he thought he saw someone at the party who was wearing his coat and suggested that Scott come down to Peabody's to check it out.
 {¶ 3} Scott went to Peabody's and met appellant and Carter in appellant's car in the parking lot outside. Scott sat in the back seat behind Carter. While in the car, appellant, Carter, and Scott observed the individual from the party wearing the Avirex jacket get into a black Ford Expedition and drive off with three other cars following it. The three other cars included a Dodge Neon, a Toyota Camry, and a Cadillac STS. Scott told appellant to follow the black Ford Expedition and appellant complied.
 {¶ 4} Appellant continued to follow the black Ford Expedition onto the highway because Scott wanted him to catch up with it and retrieve his stolen jacket. However, appellant lost track of the black Ford Expedition and two of the other cars, and he exited the highway. As appellant approached an intersection off of the exit, he recognized the Toyota Camry waiting at the light. Scott told appellant to pull up alongside the Toyota Camry and appellant complied. As they were approaching, Carter recognized the driver of the Toyota Camry as Douglas Rias ("Rias") and heard Scott say that if he could not get his own jacket back, he would at least get Doug's jacket. Once appellant pulled up, Scott fired numerous gun shots into the Toyota Camry from the back seat and also outside of appellant's car, killing Rias and injuring Nikon Bell ("Bell"), a passenger in the car. The Toyota Camry then pulled off, Scott jumped back into appellant's car, and told appellant and Carter not to say anything to anybody about what happened. Appellant then drove Scott to his car near Peabody's and dropped Carter off at his home. It was not until sometime in January 2003 that appellant divulged to the police what occurred that night and turned Scott in as the shooter.
 {¶ 5} Appellant argues in his sole assignment of error that his convictions of involuntary manslaughter and robbery are not supported by sufficient evidence. In particular, appellant contends that there was insufficient evidence to sustain his conviction for involuntary manslaughter because there was no evidence that appellant, Carter, or Scott attempted to steal or stole anything from Rias or Bell. Instead, appellant asserts that the only felony engaged in was when Scott shot Rias and Bell. However, upon review of the record, appellant's argument is without merit.
 {¶ 6} A claim of insufficient evidence invokes a due process concern and raises the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541; State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E.2d 717. In reviewing such a challenge, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Scott, 101 Ohio St.3d 31,2004-Ohio-10, ¶ 31, 800 N.E.2d 1133.
 {¶ 7} Involuntary manslaughter, pursuant to R.C. 2903.04, provides in pertinent part as follows:
 {¶ 8} "(A) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony."
 {¶ 9} Robbery, pursuant to R.C. 2911.02, provides in pertinent part as follows:
 {¶ 10} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 11} "(1) Have a deadly weapon on or about the offender's person or under the offender's control;
 {¶ 12} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
 {¶ 13} "(3) Use or threaten the immediate use of force against another."
 {¶ 14} Appellant argues that any attempted robbery was over when appellant lost track of and stopped following the black Ford Expedition. He also argues that he did not know that Scott had a gun nor did he hear Scott say, once his plans to catch up with the black Ford Expedition were foiled, that he would take Rias' jacket if he could not get his jacket back. However, it is undisputed from appellant's and Carter's testimony that the pursuit of the black Ford Expedition was to steal back Scott's alleged stolen jacket. Although appellant and Carter knew that Scott had guns, both appellant and Carter testified that they did not know Scott had a gun on him that night and instead thought Scott would get into a fistfight once they caught up with the black Ford Expedition to get his alleged stolen jacket back. Appellant did not tell Scott that he was on his own — instead he complied with Scott's instructions and followed the black Ford Expedition.
 {¶ 15} Moreover, Carter, who was sitting in the front passenger seat of appellant's car, testified that he heard Scott, sitting in the back seat, say that he would take Rias' jacket once they saw the Toyota Camry at the intersection off of the highway exit. Appellant, though claiming not to have heard Scott's comment, followed Scott's instructions to pull up alongside the Toyota Camry — the same car that was involved on the highway with the black Ford Expedition. When Scott jumped back into appellant's car after he killed Rias and injured Bell, appellant drove off and dropped Scott off at his car near Peabody's. Appellant did not call the police or an ambulance to report what had happened; instead, he dropped Carter off and went home to sleep. Appellant did not tell anybody what had happened because he was scared of what Scott would do to him and to his family. Although appellant testified he was living in fear for his life because he was threatened by Scott, he did not go to the police to seek protection. He finally spoke to the police after he was arrested at his place of employment.
 {¶ 16} When viewed in the light most favorable to the state, it is not illogical for a rational trier of fact to conclude that appellant, fully knowing that the original pursuit was to steal back Scott's stolen jacket from whomever was in the black Ford Expedition, acted as an accomplice when he pulled up alongside the Toyota Camry and facilitated Scott in the attempted robbery of Rias' jacket. Likewise, a rational trier of fact could conclude that appellant was an accomplice in causing the death of Rias when Scott attempted to rob Rias' jacket. Because there is sufficient evidence in the record to sustain appellant's conviction of robbery and involuntary manslaughter, we affirm appellant's conviction.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J, and Rocco, J., concur.